# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| CHRISTOPHER NEAL, | Case No.: |
| Plaintiff, | |
| v. | JURY TRIAL DEMANDED |
| PARSLEY ENERGY, INC., BRYAN SHEFFIELD, MATT GALLAGHER, A.R. ALAMEDDINE, RONALD BROKMEYER, WILLIAM L. BROWNING, DR. HEMANG DESAI, KAREN HUGHES, JAMES J. KLECKNER, DAVID SMITH, S. WIL VANLOH, JR. and JERRY WINDLINGER | **COMPLAINT FOR VIOLATIONS OF FEDERAL SECURITIES LAWS** |
| Defendants. | |

Plaintiff, by his undersigned attorneys, for this complaint against defendants, alleges upon personal knowledge with respect to himself, and upon information and belief based upon, *inter alia*, the investigation of counsel as to all other allegations herein, as follows:

## BACKGROUND

1.      This action concerns a proposed transaction announced on October 20, 2020, pursuant to which Parsley Energy, Inc. ("Parsley" or the "Company") will be acquired by Pioneer Natural Resources Company ("Pioneer") ("Proposed Transaction").

2.      On October 20, 2020, the Board of Directors of Parsley (the "Board" or "Individual Defendants") caused the Company to enter into an agreement and plan of merger (the "Merger Agreement") in an all-stock deal, pursuant to which Parsley shareholders will receive 0.1252 shares of Pioneer common stock for each share of Parsley common stock they own (the "Merger Consideration").

3.      On December 4, 2020, in order to convince Parsley's stockholders to vote in favor

of the Proposed Transaction, Defendants filed a materially incomplete and misleading proxy statement (the "Proxy") with the United States Securities and Exchange Commission ("SEC").

4.      The Proxy omits material information with respect to the Proposed Transaction, which renders the Proxy false and misleading.  Accordingly, Plaintiff alleges herein that defendants violated Sections 14(a) and 20(a) of the Securities Exchange Act of 1934 (the "1934 Act") in connection with the Proxy.

5.      In addition, a special meeting of Parsley stockholders will be held on January 12, 2021 to vote on the Proposed Transaction (the "Stockholder Vote"). It is therefore imperative that the material information that has been omitted from the Proxy is disclosed prior to the Stockholder Vote so Parsley stockholders can properly exercise their corporate voting rights and make an informed decision on whether to vote in favor of the merger.

## JURISDICTION & VENUE

6.      This Court has jurisdiction over the claims asserted herein pursuant to Section 27 of the 1934 Act and 28 U.S.C. §1331 because the claims asserted herein arise under Sections 14(a) and 20(a) of the 1934 Act and Rule 14a-9.

7.      This Court has jurisdiction over Defendants because each defendant is either a corporation that conducts business in this District, or is an individual with sufficient minimum contacts with this District so as to make the exercise of jurisdiction by this Court permissible under traditional notions of fair play and substantial justice.

8.      Venue is proper in this District under Section 27 of the Exchange Act, 15 U.S.C. § 78aa, as well as under 28 U.S.C. § 1391, because, among other things: (a) the conduct at issue will have an effect in this District; (b) a substantial portion of the transactions and wrongs complained of herein, occurred in this District; and (c) certain Defendants have received substantial

compensation in this District by doing business here and engaging in numerous activities that had

an effect in this District.  Additionally, the Company's common stock trades on the NYSE, which

is headquartered in this District.

## THE PARTIES

9.      Plaintiff is, and has been continuously throughout all times relevant hereto, a

Parsley shareholder.

10.      Defendant Parsley is a Delaware corporation and a party to the Merger Agreement.

Parsley shares are traded on the NYSE under the ticker symbol "PE."

11.      Defendant Bryan Sheffield is Executive Chairman of the Board of the Company.

12.      Defendant Matt Gallagher is President, Chief Executive Officer, and a director
of

the Company.

13.      Defendant A.R. Alameddine is a director of the Company.

14.      Defendant Ronald Brokmeyer is a director of the Company.

15.      Defendant William L. Browning is a director of the Company.

16.      Defendant Dr. Hemang Desai is a director of the Company.

17.      Defendant Karen Hughes is a director of the Company.

18.      Defendant James J. Kleckner is a director of the Company.

19.      Defendant David Smith is a director of the Company.

20.      Defendant S. Wil VanLoh, Jr. is a director of the Company.

21.      Defendant Jerry Windlingr is a director of the Company.

## FACTS

22.       Parsley is a holding company. The Company is an independent oil and natural gas

company. The Company focuses on the acquisition, development and exploitation of unconventional

oil and natural gas reserves in the Permian Basin. The Permian Basin is located in West Texas and Southeastern New Mexico and includes three primary sub-areas: the Midland Basin, the Central Basin Platform and the Delaware Basin.

23.      Pioneer Natural Resources Company is an oil and gas exploration and production company. The Company explores for, develops and produces oil, natural gas liquids (NGLs) and gas within the United States, with operations primarily in the Permian Basin in West Texas. The Company's operations include well stimulation and completion activities, such as hydraulic fracturing, and water distribution and disposal activities.

24.      On October 20, 2020, Parsley Board caused the Company to enter into the Merger Agreement.  The Merger Agreement provides that the merger of a direct wholly-owned subsidiary of Pioneer with and into Parsley, with Parsley surviving the merger as a direct wholly-owned subsidiary of Pioneer.

25.      At the Effective Time (as defined in the Merger Agreement), and as a result of the Merger:

> Subject to Section 2.4(f), each share of Company Class A Common Stock issued and outstanding immediately prior to the Effective Time (excluding any Excluded Shares and any unvested Company Restricted Stock Awards that do not vest by their terms as a result of the consummation of the Mergers) (the "Eligible Shares") shall thereupon be converted into and become exchangeable for 0.1252 (the "Exchange Ratio") shares of Parent Common Stock (the "Company Merger Consideration").

26.      The Merger Consideration is unfair because, among other things, the intrinsic value of the Company is in excess of the amount the Company's stockholders will receive in connection with the Proposed Transaction.

27.      It is therefore imperative that the Company shareholders receive the material information that Defendants have omitted from the Proxy so that they can meaningfully assess

whether the Proposed Transaction is in their best interests prior to the vote.

28.     Section 5.2 of the Merger Agreement has a "no solicitation" clause that prevents Parsley from soliciting alternative proposals and constraints its ability to negotiate with potential buyers:

SECTION 5.2 No Solicitation; Recommendations.

Each of Parent and the Company shall not, and shall not permit or authorize any of its Subsidiaries or any of their respective directors or officers to, and shall use reasonable best efforts to cause each of the other Representatives of such Party or any of its Subsidiaries, directly or indirectly, not to (i) solicit, initiate, endorse, knowingly encourage or knowingly facilitate any inquiry, proposal or offer that constitutes an Acquisition Proposal, or any inquiry, proposal or offer that would reasonably be expected to lead to any Acquisition Proposal, or (ii) enter into, continue or otherwise participate in any discussions or negotiations regarding, or furnish to any Person any non-public information or data with respect to, or otherwise cooperate in any way with, any Acquisition Proposal. Each of Parent and the Company shall, and shall cause each of its respective Subsidiaries and their respective directors and officers to, and shall use reasonable best efforts to cause each of the other Representatives of such Party and its Subsidiaries to, (A) immediately cease and cause to be terminated all existing discussions and negotiations with any Person conducted heretofore with respect to any Acquisition Proposal or potential Acquisition Proposal and immediately terminate all physical and electronic data room access previously granted to any such Person, (B) request the prompt return or destruction of all confidential information furnished with respect to any Acquisition Proposal or potential Acquisition Proposal during the six-month period prior to the date of this Agreement, to the extent such return or destruction had not previously been requested, and (C) not terminate, waive, amend, release or modify any provision of any confidentiality or standstill agreement to which it or any of its Affiliates or Representatives is a party with respect to any Acquisition Proposal or potential Acquisition Proposal, and shall use commercially reasonable efforts to enforce the provisions of any such agreement, which shall include, to the extent such Party has knowledge of any breach of such agreement, using commercially reasonable efforts to seek any injunctive relief available to enforce such agreement (provided, that Parent or the Company shall be permitted to grant waivers of, and not enforce, any standstill agreement, but solely to the extent that the Parent Board or the Company Board, respectively, has determined in good faith, after consultation with its outside counsel, that failure to take such action (I) would prohibit the counterparty from making an unsolicited Acquisition Proposal to the Parent Board or the Company Board, as applicable, in compliance with this Section 5.2 and (II) would constitute a breach of its fiduciary duties to the Parent Stockholders or the Company Stockholders, as applicable, under applicable Law). Nothing in this Section 5.2 shall prohibit the Company or the Company Board or Parent or the Parent Board, directly

or indirectly through any Representative, from informing any person that the Company or Parent, as applicable, is party to this Agreement and informing such person of the restrictions that are set forth in this Section 5.2. Notwithstanding the foregoing, if at any time following the date of this Agreement and prior to obtaining the Parent Stockholder Approval or the Company Stockholder Approval (as applicable), (1) Parent or the Company receives a written Acquisition Proposal that the Parent Board or the Company Board, respectively, determines in good faith to be bona fide, (2) such Acquisition Proposal was not solicited after the date of this Agreement in violation of Section 5.2(a) and did not otherwise result from a breach of this Section 5.2, (3) the Parent Board or the Company Board (as applicable) determines in good faith (after consultation with outside counsel and its financial advisor) that such Acquisition Proposal constitutes or would reasonably be expected to lead to a Superior Proposal, and (4) the Parent Board or the Company Board (as applicable) determines in good faith (after consultation with outside counsel) that the failure to take the actions referred to in clause (x) or (y) below would be inconsistent with its fiduciary duties to the Parent Stockholders or the Company Stockholders, respectively, under applicable Law, then Parent or the Company (as applicable) may (x) furnish information with respect to such Party and its Subsidiaries to the Person making such Acquisition Proposal pursuant to a customary confidentiality agreement containing confidentiality terms substantially similar to, and no less favorable in the aggregate to such Party than, those set forth in the Confidentiality Agreement (an "Acceptable Confidentiality Agreement"); provided, that (I) such Party shall provide the other Party with a non-redacted copy of each confidentiality agreement such Party has executed in accordance with this Section 5.2 and (II) any non-public information provided to any such Person shall have been previously provided to the other Party or shall be provided to the other Party prior to or substantially concurrently with (or in the case of oral communication only, within 24 hours after) the time it is provided to such Person, and (y) participate in discussions or negotiations with the Person making such Acquisition Proposal and such Person's Representatives and financing sources regarding such Acquisition Proposal and take any other actions with respect to such Acquisition Proposal that would otherwise be restricted by Section 5.2(a)(i) or Section 5.2(a)(ii) (it being understood that no solicitation under this clause (y) shall result in any proposal or offer being deemed to be "solicited"). Nothing in this Section 5.2 shall prohibit the Company or Parent, or the Company Board or the Parent Board, as applicable, directly or indirectly through any Representative, from seeking to clarify the terms and conditions of such inquiry or proposal to determine whether such inquiry or proposal constitutes or would be reasonably expected to lead to a Superior Proposal.

29.     In addition, Section 8.3 of the Merger Agreement requires Parsley to pay up to a $135,000,000 "termination fee" in the event this agreement is terminated by Parsley and improperly constrains the Company from obtaining a superior offer.  Such a termination fee is excessive and unduly restrictive to Parsley's ability to consider other offers.

30.     Defendants filed the Proxy with the SEC in connection with the Proposed Transaction.

31.     As alleged herein, the Proxy omits material information with respect to the Proposed Transaction, which renders the Proxy false and misleading.

32.     First, the Proxy omits material information regarding Parsley's and Pioneer's financial projections.

33.     With respect to Parsley's financial projections, the Proxy fails to disclose all line items used to calculate EBITDAX, discretionary cash flow, unlevered free cash flow, discretionary free cash flow, and levered free cash flow. The Proxy also fails to disclose a reconciliation of all non-GAAP to GAAP metrics.

34.     With respect to Pioneer's financial projections, the Proxy fails to disclose all line items used to calculate EBITDAX, discretionary cash flow, unlevered free cash flow, and EBITDA. The Proxy also fails to disclose a reconciliation of all non-GAAP to GAAP metrics.

35.     The disclosure of projected financial information is material information necessary for stockholders to gain an understanding of the basis for any projections as to the future financial performance of the combined company. In addition, this information is material and necessary for stockholders to understand the financial analyses performed by the companies' financial advisors rendered in support of any fairness opinion.

36.     Second, the Proxy omits material information regarding the analyses performed by the Company's financial advisors Credit Suisse Securities (USA) LLC ("Credit Suisse") and Wells Fargo Securities, LLC ("Wells Fargo") and Pioneer's financial advisors Goldman Sachs & Co. LLC ("Goldman") and Morgan Stanley & Co. LLC ("Morgan Stanley") in connection with the Proposed Transaction.

37.     With respect to Credit Suisse's *Discounted Cash Flow Analysis—Corporate of Parsley*, the Proxy fails to include: (i) the individual inputs and assumptions underlying the range of discount rates ranging from 9.5% to 11.5% and (ii) Credit Suisse's basis for applying terminal multiples of 4.75x—5.75x.  This information must be disclosed to make the Proxy not materially misleading to Parsley stockholders and provide stockholders with full and relevant information in considering how to vote.

38.     With respect to Credit Suisse's *Discounted Cash Flow Analysis—Corporate of Pioneer*, the Proxy fails to include: (i) the individual inputs and assumptions underlying the range of discount rates ranging from 9.0% to 11.0% and (ii) Credit Suisse's basis for applying terminal multiples of 5.5x—6.5x.  This information must be disclosed to make the Proxy not materially misleading to Parsley stockholders and provide stockholders with full and relevant information in considering how to vote.

39.     With respect to Credit Suisse's *Discounted Cash Flow Analysis— Net Asset Value of Parsley*, the Proxy fails to include the individual inputs and assumptions underlying the range of discount rates ranging from 9.5% to 11.5%.  This information must be disclosed to make the Proxy not materially misleading to Parsley stockholders and provide stockholders with full and relevant information in considering how to vote.

40.     With respect to Credit Suisse's *Discounted Cash Flow Analysis— Net Asset Value of Pioneer*, the Proxy fails to include the individual inputs and assumptions underlying the range of discount rates ranging from 9.0% to 11.0%.  This information must be disclosed to make the Proxy not materially misleading to Parsley stockholders and provide stockholders with full and relevant information in considering how to vote.

41.     With respect to Wells Fargo's *Discounted Cash Flow Analysis of Parsley*, the Proxy

fails to include: (i) the individual inputs and assumptions underlying the range of discount rates ranging from 7.75% to 9.25% and (ii) Wells Fargo's basis for applying terminal EBITDAX multiples of 4.75x to 5.75x.  This information must be disclosed to make the Proxy not materially misleading to Parsley stockholders and provide stockholders with full and relevant information in considering how to vote.

42.     With respect to Wells Fargo's *Discounted Cash Flow Analysis of Pioneer*, the Proxy fails to include: (i) the individual inputs and assumptions underlying the range of discount rates ranging from 7.25% to 8.75% and (ii) Wells Fargo's basis for applying terminal EBITDAX multiples of 5.50x to 6.50x.  This information must be disclosed to make the Proxy not materially misleading to Parsley stockholders and provide stockholders with full and relevant information in considering how to vote.

43.     With respect to Wells Fargo's *Selected Public Companies Analysis*, the Proxy fails to include the individual multiples and metrics for the companies observed by Wells Fargo in the analysis. This information must be disclosed to make the Proxy not materially misleading to Parsley stockholders and provide stockholders with full and relevant information in considering how to vote.

44.     With respect to Goldman's *Illustrative Discounted Cash Flow Analysis – Parsley*, the Proxy fails to include (i) the individual inputs and assumptions underlying the range of discount rates ranging from 7.5% to 8.5%, (ii) estimates of Parsley's weighted average cost of capital, (iii) the range of illustrative terminal values for Parsley as of December 31, 2024, (iv) the range of illustrative enterprise values for Parsley, (v) Parsley's net debt as of September 30, 2020, and (v) the number of fully diluted shares of Parsley Class A common stock as of October 19, 2020.  This information must be disclosed to make the Proxy not materially misleading to Parsley stockholders and provide stockholders with full and relevant information in considering how to vote.

45.     With respect to Goldman's *Discounted Cash Flow Analysis—Pioneer Standalone*, the Proxy fails to include (i) the individual inputs and assumptions underlying the range of discount rates ranging from 6.5% to 7.5%, (ii) the range of illustrative terminal values for Pioneer as of December 31, 2024, (iii) the range of illustrative enterprise values for Pioneer, (iv) Pioneer's net debt as of September 30, 2020, and (v) the number of fully diluted shares of Pioneer common stock as of October 19, 2020.  This information must be disclosed to make the Proxy not materially misleading to Parsley stockholders and provide stockholders with full and relevant information in considering how to vote.

46.     With respect to Goldman's *Discounted Cash Flow Analysis—Pioneer Pro Forma*, the Proxy fails to include (i) the individual inputs and assumptions underlying the range of discount rates ranging from 6.5% to 7.5%, (ii) the range of illustrative terminal values for Pioneer on a pro forma basis as of December 31, 2024, (iii) the range of illustrative enterprise values for Pioneer on a pro forma basis, (iv) Pioneer's on a pro forma basis net debt as of September 30, 2020, and (v) the number of fully diluted shares of Pioneer common stock as of October 19, 2020.  This information must be disclosed to make the Proxy not materially misleading to Parsley stockholders and provide stockholders with full and relevant information in considering how to vote.

47.     With respect to Morgan Stanley's *Pioneer Discounted Cash Flow Analysis*, the Proxy fails to include: (i) the individual inputs and assumptions underlying the range of discount rates ranging from 7.2% to 8.8% and an exit multiple range of 4.5x to 6.5x, and (ii) terminal value, and (iii) Pioneer's weighted average cost of capital.  This information must be disclosed to make the Proxy not materially misleading to Parsley stockholders and provide stockholders with full and relevant information in considering how to vote.

48.     With respect to Morgan Stanley's *Parsley Discounted Cash Flow Analysis*, the

Proxy fails to include: (i) the individual inputs and assumptions underlying the range of discount rates ranging from 7.9% to 9.3% and an exit multiple range of 4.0x to 6.0x, and (ii) terminal value, and (iii) Parsley's weighted average cost of capital.  This information must be disclosed to make the Proxy not materially misleading to Parsley stockholders and provide stockholders with full and relevant information in considering how to vote.

49.     Third, the Proxy fails to disclose whether the Company entered into any confidentiality agreements that contained standstill and/or "don't ask, don't waive" provisions that are or were preventing the counterparties from submitting superior offers to acquire the Company.

50.     The omission of the above-referenced material information renders the Proxy false and misleading.

51.     The above-referenced omitted information, if disclosed, would significantly alter the total mix of information available to the Company's stockholders.

## CLAIMS FOR RELIEF

### COUNT I

### (AGAINST ALL DEFENDANTS FOR VIOLATIONS OF SECTION 14(a) OF THE EXCHANGE ACT AND RULE 14a-9 PROMULGATED THEREUNDER)

52.     Plaintiff incorporates each and every allegation set forth above as if fully set forth herein.

53.     Rule 14a-9, promulgated by the SEC pursuant to Section 14(a) of the Exchange Act, requires that proxy communications with stockholders shall not contain "any statement which, at the time and in the light of the circumstances under which it is made, is false or misleading with respect to any material fact, or which omits to state any material fact necessary in order to make the statements therein not false or misleading." 17 C.F.R. § 240.14a-9.

54.     Defendants issued the Proxy with the intention of soliciting stockholder support for

the Proposed Transaction. Each of the Defendants reviewed and authorized the dissemination of the Proxy and the use of their name in the Proxy, which fails to provide critical information regarding, among other things, the financial projections that were prepared by the Company and relied upon by the Board in recommending the Company's stockholders vote in favor of the Proposed Transaction.

55.     In so doing, Defendants made untrue statements of fact and/or omitted material facts necessary to make the statements made not misleading.  By virtue of their roles as officers and/or directors, each of the Individual Defendants were aware of the omitted information but failed to disclose such information, in violation of Section 14(a). The Individual Defendants were therefore negligent, as they had reasonable grounds to believe material facts existed that were misstated or omitted from the Proxy, but nonetheless failed to obtain and disclose such information to stockholders as required.

56.     The preparation of a Proxy by corporate insiders containing materially false or misleading statements or omitting a material fact constitutes negligence. Defendants were negligent in preparing and reviewing the Proxy.  Defendants were also negligent in choosing to omit material information from the Proxy or failing to notice the material omissions in the Proxy upon reviewing it, which they were required to do carefully.

57.     The misrepresentations and omissions in the Proxy are material to Plaintiff, who will be deprived of his right to cast an informed vote if such misrepresentations and omissions are not corrected prior to the vote on the Proposed Transaction. Plaintiff has no adequate remedy at law.

## COUNT II

## (AGAINST THE INDIVIDUAL DEFENDANTS FOR VIOLATIONS OF
## SECTION 20(a) OF THE EXCHANGE ACT)

58.     Plaintiff incorporates each and every allegation set forth above as if fully set forth herein.

59.     The Individual Defendants acted as controlling persons of the Company within the meaning of Section 20(a) of the Exchange Act as alleged herein. By virtue of their positions as directors of the Company, and participation in and/or awareness of the Company's operations and/or intimate knowledge of the incomplete and misleading statements contained in the Proxy filed with the SEC, they had the power to influence and control and did influence and control, directly or indirectly, the decision making of the Company, including the content and dissemination of the various statements that Plaintiff contends are materially incomplete and misleading.

60.     Each of the Individual Defendants was provided with or had unlimited access to copies of the Proxy and other statements alleged by Plaintiff to be misleading prior to and/or shortly after these statements were issued and had the ability to prevent the issuance of the statements or cause the statements to be corrected.

61.     In particular, each of the Individual Defendants had direct and supervisory involvement in the day-to-day operations of the Company, and, therefore, is presumed to have had the power to control or influence the particular transactions giving rise to the Exchange Act violations alleged herein, and exercised the same. The omitted information identified above was reviewed by the Board prior to voting on the Proposed Transaction. The Proxy at issue contains the unanimous recommendation of the Board to approve the Proposed Transaction. The Individual Defendants were thus directly involved in the making of the Proxy.

62.     In addition, as the Proxy sets forth at length, and as described herein, the Individual

Defendants were involved in negotiating, reviewing, and approving the Merger Agreement. The Proxy purports to describe the various issues and information that the Individual Defendants reviewed and considered. The Individual Defendants participated in drafting and/or gave their input on the content of those descriptions.

63.     By virtue of the foregoing, the Individual Defendants have violated Section 20(a) of the Exchange Act.

64.     As set forth above, the Individual Defendants had the ability to exercise control over and did control a person or persons who have each violated Section 14(a) and Rule 14a-9, by their acts and omissions as alleged herein. By virtue of their positions as controlling persons, these defendants are liable pursuant to Section 20(a) of the Exchange Act. As a direct and proximate result of Individual Defendants' conduct, Plaintiff will be irreparably harmed.

65.     Plaintiff has no adequate remedy at law.

## PRAYER FOR RELIEF

**WHEREFORE**, plaintiff prays for judgment and relief as follows:

A.     Preliminarily and permanently enjoining defendants and all persons acting in concert with them from proceeding with, consummating, or closing the Proposed Transaction;

B.     In the event defendants consummate the Proposed Transaction, rescinding it and setting it aside or awarding rescissory damages;

C.     Directing the Individual Defendants to disseminate a proxy that does not contain any untrue statements of material fact and that states all material facts required in it or necessary to make the statements contained therein not misleading;

D.     Declaring that defendants violated Sections 14(a) and/or 20(a) of the 1934 Act, as well as Rule 14a-9 promulgated thereunder;

E.      Awarding plaintiff the costs of this action, including reasonable allowance for plaintiff's attorneys' and experts' fees; and

F.      Granting such other and further relief as this Court may deem just and proper.

## **JURY DEMAND**

Plaintiff hereby requests a trial by jury on all issues so triable.

Dated: December 9, 2020

MOORE KUEHN, PLLC

*/s/Justin Kuehn*
Justin A. Kuehn
Fletcher W. Moore
30 Wall Street, 8th floor
New York, New York 10005
Tel: (212) 709-8245
jkuehn@moorekuehn.com
fmoore@moorekuehn.com

*Attorneys for Plaintiff*